23-CV-01320 (JHR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMOS WINBUSH III and TIFFANY WINBUSH on
behalf of themselves and on behalf of their infant
children, K.W. and S.J.W.,

                                                            Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION;
BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK; NEW
YORK CITY COMMUNITY SCHOOL DISTRICT 2;
MAGGIE SIENA, Principal of Peck Slip School (in her
individual capacity); CASEY COREY, Assistant
Principal of Peck Slip School (in her individual
capacity),

                                                            Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: John Treat*
*Tel: (212) 356-2461*

*Of Counsel: Kendra Riddleberger*
*Tel: (212) 356-4377*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................ III

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS ........................................................ 3

STANDARD OF REVIEW ........................................................ 6

ARGUMENT

       POINT I

             PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE RACIAL DISCRIMINATION CLAIMS FOR S.J.W. ......................................................................... 7

       POINT II

             PLAINTIFFS' CLAIMS REGARDING K.W. PRIOR TO THE 2019-20 SCHOOL YEAR ARE TIME-BARRED ................................................... 10

       POINT III

             PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED A *MONELL* CLAIM ............................ 13

             A.  Plaintiffs Have Failed to State a *Monell* Claim Against the Municipal Defendants ........................... 14

             B.  Plaintiffs Also Fail to State a *Monell* Claim Against the Individual Defendants ........................... 16

             C.  In the Alternative, Defendants Request a Stay of Discovery on Plaintiffs' *Monell* Claims Until the Completion of Discovery ........................................... 17

       POINT IV

             PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ARE MOOT ................................................ 18

**Page**

POINT V

        PLAINTIFFS CANNOT RECEIVE EMOTIONAL
        DISTRESS DAMAGES UNDER TITLE VI ............................................ 19

CONCLUSION.......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

*Agosto v. N.Y.C. Dep't of Educ.*,
   982 F.3d 86 (2d Cir. 2020)..................................................................................16

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   815 F.3d 105 (2d Cir. 2016)................................................................................18

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009)..................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................6

*Bell Atl. Corp. v. Twombley*,
   550 U.S. 544 (2007)..............................................................................................6

*Berkley v. City of New Rochelle*,
   2022 U.S. Dist. LEXIS 46069
   (S.D.N.Y. Mar. 15, 2022) ...................................................................................14

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods.*,
   2021 U.S. Dist. LEXIS 152026 (S.D.N.Y. Aug. 12, 2021)...................................19

*Boncoeur v. Harverstraw-Stony Point Cent. Sch. Dist.*,
   2022 U.S. Dist. LEXIS 51428
   (S.D.N.Y. Mar. 22, 2022) ...................................................................................17

*Connick v. Thompson*,
   563 U.S. 51 (2011)...............................................................................................13

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   142 S. Ct. 1562 (2022),
   *reh'g denied*, 142 S. Ct. 2853 (2022)...................................................................20

*D.S. v. Rochester City Sch. Dist.*,
   2020 U.S. Dist. LEXIS 223647
   (W.D.N.Y. Nov. 30, 2020).....................................................................................8

*D.T. v. Somers Cent. Sch. Dist.*,
   348 Fed. App'x 697 (2d Cir. 2009).........................................................................9

*D.T. v. Somers Cent. Sch. Dist.*,
   588 F. Supp. 485 (S.D.N.Y. 2008) ......................................................................10

**Cases**                                                                                                                          **Pages**

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999).........................................................................................7, 8, 9

*Deferio v. City of Syracuse*,
    770 Fed. App'x 587 (2d Cir. 2019).........................................................................14

*Delaney v. City of Albany*,
    2019 U.S. Dist. LEXIS 58151 (N.D.N.Y. Apr. 4, 2019).........................................15

*DiStiso v. Cook*,
    691 F.3d 226 (2d Cir. 2012).....................................................................................8, 9

*Dodge St. L.L.C. v. C.R.L. Mgmt., Inc.*,
    2000 U.S. App. LEXIS 5766
    (2d Cir. Mar. 29, 2000) ........................................................................................18, 19

*Doe v. Anonymous Inc.*,
    2019 U.S. Dist. LEXIS 107886 (S.D.N.Y. June 25, 2019)....................................12

*Doe v. Torrington Bd. of Educ.*,
    179 F. Supp. 3d 179 (D. Conn. 2016)......................................................................10

*Doyle v. Midland Credit Mgmt.*,
    722 F.3d 78 (2d Cir. 2013).......................................................................................19

*Eagleston v. Guido*,
    41 F.3d 865 (2d Cir. 1994).......................................................................................10

*Exxon Mobil Corp. v. Allapattah Servs.*,
    545 U.S. 546 (2005)...................................................................................................7

*Franzese v. City of N.Y.*,
    2018 U.S. Dist. LEXIS 193607 (S.D.N.Y. Nov. 13, 2018)....................................15

*Gant v. Wallingford Bd. of Educ.*,
    195 F.3d 134 (2d Cir. 1999)......................................................................................9

*Goodman v. N.Y.C. Off-Track Betting Corp.*,
    1999 U.S. Dist. LEXIS 6291
    (S.D.N.Y. Apr. 30, 1999),
    *aff'd*, 201 F.3d 431 (2d Cir. 1999) .........................................................................11

*I.T. v. N.Y.C. Dep't of Educ.*,
    2020 U.S. Dist. LEXIS 133614
    (E.D.N.Y. July 14, 2020) ...........................................................................................8

iv

**Cases**                                                                                                           **Pages**

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
    567 U.S. 298 (2012)...........................................................................................18

*Lachaab v. State Univ. of N.Y. (SUNY) Bd. of Trs.,*
    715 Fed. App'x 73 (2d Cir. 2018)....................................................................7

*Lara-Grimaldi v. Cnty. of Putnam,*
    2018 U.S. Dist. LEXIS 54686
    (S.D.N.Y. Mar. 29, 2018) ...............................................................................15

*Lifeguard Licensing Corp. v. Kozak,*
    371 F. Supp. 3d 114 (S.D.N.Y. 2019).............................................................19

*Makarova v. U.S.,*
    201 F.3d 110 (2d Cir. 2000)..............................................................................6

*Manolov v. Borough of Manhattan Cmty. Coll.,*
    952 F. Supp. 2d 522 (S.D.N.Y. 2012)...............................................................7

*McAllister v. N.Y.C. Police Dep't,*
    49 F. Supp. 2d 688 (S.D.N.Y. 1999)...............................................................14

*McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.,*
    2021 U.S. App. LEXIS 33750 (2d Cir. 2021) ...................................................6

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007).........................................................................................19

*Milan v. Wertheimer,*
    808 F.3d 961 (2d Cir. 2015)............................................................................10

*Minea v. City of N.Y.,*
    2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29, 2013) .....................................17

*Monell v. N.Y.C. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)..................................................................................13, 16

*Montero v. City of Yonkers,*
    890 F.3d 386 (2d Cir. 2018)............................................................................14

*Oliver v. City of N.Y.,*
    540 F. Supp. 3d 434 (S.D.N.Y. 2021).............................................................17

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,*
    507 F.3d 117 (2d Cir. 2007)..............................................................................6

**Cases**                                                                                       **Pages**

*Quinn v. Green Tree Credit Corp.*,
   159 F.3d 759 (2d Cir. 1998)................................................................................11, 12

*Ricciuti v. N.Y.C. Transit Auth.*,
   796 F. Supp. 84 (S.D.N.Y. 1992) ...............................................................................18

*Rich v. N.Y.*,
   2022 U.S. Dist. LEXIS 60779 (S.D.N.Y. Apr. 29, 2022).........................................11

*Rivera v. City of N.Y.*,
   2022 U.S. Dist. LEXIS 87083 (S.D.N.Y. May 13, 2022).........................................11

*Rodriguez v. City of N.Y.*,
   2022 U.S. Dist. LEXIS 195034 (E.D.N.Y. Oct. 20, 2022).......................................17

*Roe v. City of Waterbury*,
   542 F.3d 31 (2d Cir. 2008)........................................................................................15

*Roggenbach v. Touro Coll. of Osteopathic Med.*,
   7 F. Supp. 3d 338 (S.D.N.Y. 2014) ............................................................................8

*Scaggs v. N.Y. State Dep't of Educ.*,
   2007 U.S. Dist. LEXIS 35860
   (E.D.N.Y. May 16, 2007) ...........................................................................................9

*Simms v. City of N.Y.*,
   2011 U.S. Dist. LEXIS 115949 (E.D.N.Y. Sept. 27, 2011),
   *aff'd*, 480 Fed. App'x 627 (2d Cir. 2012)...............................................................16

*Sundaram v. Brookhaven Nat'l Labs.*,
   424 F. Supp. 2d 545 (E.D.N.Y. 2006) ............................................................... 12-13

*Thrower v. Pozzi*,
   2002 U.S. Dist. LEXIS 1035 (S.D.N.Y. Jan. 23, 2002)...........................................18

*Triano v. Town of Harrison*,
   895 F. Supp. 2d 526 (S.D.N.Y. 2012).......................................................................16

*Trinidad v. N.Y.C. Dep't of Corr.*,
   423 F. Supp. 2d 151 (S.D.N.Y. 2006)........................................................................11

*Valle v. Bally Total Fitness*,
   2003 U.S. Dist. LEXIS 17093
   (S.D.N.Y. Sept. 29, 2003)............................................................................................8

**Cases**                                                              **Pages**

*Vippolis v. Vill. of Haverstraw,*
    768 F.2d 40 (2d Cir. 1985)................................................................................14

*Weeks v. N.Y. State,*
    273 F.3d 76 (2d Cir. 2001)................................................................................12

*Yamashita v. Scholastic Inc.,*
    936 F.3d 98 (2d Cir. 2019)..................................................................................6

*Zeno v. Pine Plains Cent. Sch. Dist.,*
    702 F.3d 655 (2d Cir. 2012)................................................................................7

*Zherka v. City of N.Y.,*
    2010 U.S. Dist. LEXIS 119699 (S.D.N.Y. Nov. 9, 2010) ..................................15

**Statutes**

42 U.S.C. § 1983 ..............................................................1, 9, 10, 11, 13, 17

Fed. R. Civ. P. 12(b)(1) ................................................................6, 7, 19

Fed. R. Civ. P. 26(c) ........................................................................17

Fed. R. Civ. P. 12(b)(6) ....................................................................2, 6

N.Y. Educ. Law § 1709 ......................................................................17

**Other Authorities**

N.Y. Exec. Order § 202.8 ....................................................................11

N.Y. Exec. Order § 202.67 ..................................................................11

## PRELIMINARY STATEMENT

Plaintiffs Amos and Tiffany Winbush (the "Winbushes") bring this federal action alleging racial discrimination based on their children's experience while students at the Peck Slip School ("Peck Slip"),[1] a public school in Manhattan's Financial District. *See* Compl. (ECF No. 1). They bring claims against Defendants the New York City Department of Education (the "DOE"); the Board of Education of the City School District of the City of New York (the "BOE"); New York City Community School District 2 ("District 2") (together, the "Municipal Defendants"); the Principal of Peck Slip, Maggie Siena; and the Assistant Principal of Peck Slip, Casey Corey (together, the "Individual Defendants").

In the Complaint, Plaintiffs bring a myriad of claims:

1. Unlawful discrimination in violation of Title VI of the Civil Rights Act against the Municipal Defendants;

2. Unlawful discrimination in violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment against all Defendants;

3. Unlawful retaliation in violation of Title VI of the Civil Rights Act of 1964 against the Municipal Defendants;

4. Unlawful retaliation in violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment against all Defendants;

5. Declaratory and injunctive relief pursuant to Title VI of the Civil Rights Act of 1964 against the Municipal Defendants; and

6. Declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against the Municipal Defendants.

Ms. Siena and Ms. Corey are career educators in the New York City schools, and Ms. Siena founded Peck Slip. Amos Winbush claims to be an "accomplished innovator" who works in finance and technology, and Tiffany Winbush has run for the New York City Council and now

---

[1]   *See* https://www.peckslip.org/.

works for a financial services company.  The Winbushes live in the Financial District of Manhattan and sent their children—K.W. (who will soon complete the fifth grade at Peck Slip), and S.J.W. (who is in kindergarten)—to Peck Slip from 2016 through the 2022-23 school year.  Plaintiffs allege that both K.W. and S.J.W. faced various incidents of racism and bullying by other students at Peck Slip, and that the DOE failed to appropriately intervene to prevent them.  Of note, there are instances in the Complaint where the race of a person (student, teacher, administrator, etc.) is mentioned and times where the person's race is omitted.

K.W. enrolled in Pre-K at Peck Slip in the fall of 2016, and Plaintiffs allege that in her Pre-K, kindergarten, first grade, and second grade years she faced bullying, harassment, and racism from her fellow students.  Plaintiffs further allege that they raised concerns about these alleged incidents numerous times with K.W.'s teachers, the school administration, District 2 leadership, and even local political leaders, but they claim that their concerns were ignored and nothing was done to stop the alleged problem.  For K.W.'s third and fourth grade years in 2020-21 and 2021-22, however, Plaintiffs make only a single allegation unconnected to any supposed racism for each year.  S.J.W. enrolled at Peck Slip for Pre-K in fall 2021.  Plaintiffs allege that S.J.W. was also bullied by fellow students at Peck Slip—though they do not allege that this bullying was racial in nature—and that they raised concerns with the administration regarding him as well, but nothing was done for him either.  Plaintiffs further allege that K.W. faced more incidents of racism and bullying in the 2022-23 school year, though they concede that the school investigated the allegations and found that the allegations were unfounded.

As set forth more fully below, the Complaint suffers from a number of fatal deficiencies, and the Court should dismiss several causes of action as a matter of law pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).  First, Plaintiffs fail to state a claim for racial discrimination—under

either Title VI or the Equal Protection Clause—for S.J.W. because they have not alleged either severe and discriminatory harassment or deliberate indifference.   Second, Plaintiffs' racial discrimination claims prior to the 2019-20 school year for K.W. are time-barred because Plaintiffs have not alleged a continuing violation due to a discontinuity in the 2020-21 and 2021-22 school years.   Third, Plaintiffs have failed to allege a *Monell* claim against DOE because their allegations are conclusory, do not concretely describe the supposed municipal policy that led to the constitutional violation, and do not plead a causal connection between this "policy" and the alleged violations of their constitutional rights.[2]   Nor do they allege a *Monell* claim against the Individual Defendants because these Defendants are not policymakers.   Fourth, Plaintiffs bring claims for injunctive and declaratory relief that will become moot as of the end of this school year, since K.W. will graduate at the end of this school year, and S.J.W. is no longer a student at Peck Slip. Finally, to the extent that Plaintiffs request damages for emotional distress for their claims brought pursuant to Title VI of the Civil Rights Act of 1964, these damages are not available.

Accordingly, for the reasons outlined below, the Court should grant Defendants' motion and dismiss or limit Plaintiffs' claims and recovery as applicable.

## STATEMENT OF FACTS

The Winbushes live in the Financial District of lower Manhattan.   Compl. (ECF No. 1) ¶ 30.   From the 2016-17 through the 2022-23 school years, they sent their children K.W. and S.J.W. to Peck Slip, which is located at 1 Peck Slip, also in the Financial District.   *Id.* ¶¶ 31–32.

K.W. enrolled in Pre-K at Peck Slip in fall 2016.   *Id.* ¶ 51.   That year, Plaintiffs allege that K.W. endured two incidents where fellow students made racist comments towards her.   *Id.* ¶¶ 53,

---

[2]   Even if the Court does not dismiss Plaintiffs' *Monell* claims, it should nevertheless stay discovery on these claims while the parties litigate whether there is any underlying constitutional violation.

59.  Plaintiffs allege that two students on one occasion struck K.W.  *Id.* ¶ 61.  Plaintiffs allege that they raised these incidents with school leadership but nothing was done.  *Id.* ¶¶ 56, 58, 60, 63.  In 2016, Plaintiffs allege that Mr. Winbush requested that the school found a Diversity and Inclusion Committee, which it did.  *Id.* ¶¶ 56–57.

During the 2017-18 school year, K.W. was in kindergarten, and Plaintiffs allege that she faced two more racist incidents involving fellow students that year.  *Id.* ¶¶ 77–78, 82.  They allege that Mr. Winbush tried to address bias and racism at Peck Slip (including through the Diversity and Inclusion Committee), but they claim that his efforts were unsuccessful.  *Id.* ¶¶ 64, 67–68, 74.  Mr. Winbush left the Diversity and Inclusion Committee in March 2018 and the committee has since been disbanded.  *Id.* ¶¶ 75–76.  Plaintiffs allege that they raised concerns regarding the racism at the school both with school administration and District 2 leadership.  *Id.* ¶¶ 69–73, 79–80, 83–84.  Plaintiffs allege that because these concerns were not acted upon, they contacted a City Councilperson and a State Senator, which led to a meeting between Mr. Winbush, Ms. Siena, and the District 2 Superintendent  *Id.* ¶¶ 81, 85–89.

K.W. was enrolled in the first grade in 2018-19.  Towards the end of the same school year, beginning in April, Plaintiffs allege that K.W. faced several more racist incidents, yet school officials allegedly failed to sufficiently intervene.  *Id.* ¶¶ 90–95.

K.W. was in second grade for the 2019-20 school year.  *Id.* ¶ 96.  Plaintiffs allege that prior to the COVID-19 shutdown in March 2020, K.W. experienced additional negative encounters with fellow students: a student took her Play-Doh, she was hit twice at recess by other girls, and students drew a racist picture of her.  *Id.* ¶¶ 97–98, 103, 108.  Plaintiffs allege that they raised concerns about the treatment of K.W. multiple times that year, yet Peck Slip administrators minimized their concerns and failed to prevent the harassment.  *Id.* ¶¶ 99–102, 104–07, 109–14.

Notably, the Complaint contains few allegations regarding K.W. for the school years 2020-21 (when K.W. attended third grade remotely) and 2021-22 (when K.W. was in fourth grade). Their **sole** allegation for K.W.'s third grade year is that her fellow students told her that she could not join their Zoom breakout rooms. *Id.* ¶¶ 116–17. Similarly, the **sole** allegation for K.W.'s fourth grade year is that the Winbushes told K.W.'s teacher in a parent-teacher conference that K.W. felt isolated and sad; however, the Complaint does not give any indication as to what caused K.W. to allegedly feel this way. *Id.* ¶ 118.

S.J.W., the Winbushes' younger child, enrolled in Pre-K at Peck Slip in fall 2021. *Id.* ¶ 131. Plaintiffs allege that during this year, S.J.W. was hit three times by a student, who also threatened him. *Id.* ¶¶ 133, 136, 145, 151. Plaintiffs allege that they raised concerns with S.J.W.'s teacher and school administration but nothing was done. *Id.* ¶¶ 134–35, 137–44, 146–49.

K.W. attended fifth grade in the 2022-23 school year. *Id.* ¶ 119. Plaintiffs allege that her teacher assigned a project on slavery, during which the teacher and fellow students made racist and inappropriate comments regarding slavery. *Id.* ¶¶ 120–23. Plaintiffs allege that there was a fellow student in K.W.'s class who exhibited toxic behavior towards K.W.—but Plaintiffs concede that the school investigated these allegations and found no bullying. *Id.* ¶¶ 125–29. S.J.W. attended kindergarten in the same school year, and Plaintiffs allege that he was struck on multiple occasions by a volatile fellow student (who also caused numerous issues with other students). *Id.* ¶¶ 153–56, 158–63. Notably, Plaintiffs do not make **any** allegations that S.J.W. was bullied or harassed **in any way** because of his race.

Finally, Plaintiffs' attorneys sent Defendants a letter on February 1, 2023, and Plaintiffs allege that K.W.'s teacher decided to instruct the entire class to not tell their parents what occurred in the classroom, to cancel an entire field trip, and remove certain lunch privileges for all students

in the class because of this letter. *Id.* ¶¶ 167–73.  Plaintiffs further allege that Ms. Siena and Ms. Corey also pulled K.W. out of class after the letter and told her that her allegations were hard to believe. *Id.* ¶¶ 174–76.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007).  The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct involved." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombley*, 550 U.S. at 556).  "When the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct,' the court must grant a motion to dismiss." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).  The court, in deciding a motion to dismiss, must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citation omitted).  However, the court shall not give "effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombley*, 550 U.S. at 555).

The standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is "substantively identical" to the standard for a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, 2021 U.S. App. LEXIS 33750, at *2 (2d Cir. Nov. 15, 2021) (quotation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (federal courts may not preside over cases absent subject matter jurisdiction).

## ARGUMENT

### POINT I
### PLAINTIFFS FAIL TO SUFFICIENTLY
### ALLEGE RACIAL DISCRIMINATION CLAIMS FOR S.J.W.

*First*, Plaintiffs' racial discrimination claims under both Title VI and the Equal Protection Clause regarding S.J.W. fail because Plaintiffs do not allege severe and discriminatory harassment or deliberate indifference. *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.10 (2d Cir. 2012) (applying the deliberate indifference framework to Title VI claims and noting its application to the Equal Protection Clause). To show deliberate indifference, Plaintiffs must show four elements: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference. *Lachaab v. State Univ. of N.Y. (SUNY) Bd. of Trs.*, 715 Fed. App'x 73, 74 (2d Cir. 2018) (quoting *Zeno*, 702 F.3d at 665).

Defendants do not dispute substantial control, since all incidents identified by Plaintiffs in the Complaint regarding S.J.W. occurred on Peck Slip grounds during school hours. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645–46 (1999) (citations omitted) ("Where, as here, the misconduct occurs during school hours and on school grounds . . . the [school] retains substantial control over the context in which the harassment occurs."). Nor do Defendants dispute actual knowledge; actual knowledge requires that Plaintiffs notify Defendants of the alleged discrimination, and Plaintiffs informed Defendants here on numerous occasions about alleged issues with S.J.W. *See, e.g.*, *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2012); *see also, e.g.*, Compl. (ECF No. 1) ¶¶ 134, 138, 141–42.

7

However, Plaintiffs have failed to plead either severe and discriminatory harassment or deliberate indifference.  The severe and discriminatory harassment prong of the standard requires the harassment to be "severe, pervasive, and objectively offensive."  *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 348 (S.D.N.Y. 2014) (quotation omitted); *see also I.T. v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 133614, at *16 (E.D.N.Y. July 14, 2020) (quotation omitted) (an inquiry into this prong looks into "whether Plaintiff suffered severe, pervasive, and objectively offensive bullying or harassment which is discriminatory in effect").  "Bullying or harassment is discriminatory if it restricts the educational benefit of an academic environment free from racial hostility."  *I.T.*, 2020 U.S. Dist. LEXIS 133614, at *16 (quotations omitted).[3]

Here, Plaintiffs have not alleged that ***any*** of the incidents involving S.J.W. were racially motivated.[4]  This is not sufficient to state a discrimination claim under Title VI.  *See Valle v. Bally Total Fitness*, 2003 U.S. Dist. LEXIS 17093, at *8 (S.D.N.Y. Sept. 29, 2003) (dismissing complaint because plaintiff "fail[ed] to incorporate any factual allegations that would indicate how his race, gender, age, or national origin played a role" in the alleged action against him); *see also D.S. v. Rochester City Sch. Dist.*, 2020 U.S. Dist. LEXIS 223647, at *30–32 (W.D.N.Y. Nov. 30, 2020) (dismissing Title VI claim where plaintiff failed to allege that she was called names or

---

[3]   To the extent that Plaintiffs allege that the treatment of S.J.W. was discriminatory in that he was punished while his white classmates were not (*see* Compl. (ECF No. 1) ¶¶ 146–49), the Court must accord deference to the decisions of the Peck Slip administration.  *See Davis*, 526 U.S. at 648 (citation omitted) ("courts should refrain from second-guessing the disciplinary decisions made by school administrators").  Victims do not have a right to specific remedial measures.  *See id.*

[4]   At best, Plaintiffs allege that the alleged bullying faced by S.J.W. was racial in nature because of his sister's experience—even assuming that his sister was racially bullied (which Defendants do not concede).  However, to succeed on a deliberate indifference claim, "well established law requires a plaintiff to prove (1) that ***the child in question*** was in fact harassed by other students based on his race. . . ."  *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012) (citation omitted) (emphasis added).

assaulted with any reference to her race); *Scaggs v. N.Y. State Dep't of Educ.*, 2007 U.S. Dist. LEXIS 35860, at *41–42 (E.D.N.Y. May 16, 2007) (dismissing Title VI claims where plaintiffs made only "bare and conflicting allegations, without any facts in support" of their racial discrimination claim).

Plaintiffs similarly do not establish Defendants' deliberate indifference. "[T]o succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student racial harassment, well established law requires a plaintiff to prove . . . that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur." *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012) (internal quotation marks omitted). "Furthermore, the deliberate indifference must subject a student to harassment, 'that is, the indifference must, at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it." *D.T. v. Somers Cent. Sch. Dist.*, 348 Fed. App'x 697, 700 (2d Cir. 2009) (quoting *Davis*, 526 U.S. at 645). "This is because, in cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999). "[D]eliberate indifference can be found when the defendant's response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" *Gant ex rel. Gant*, 195 F.3d 134, 141 (2d Cir. 1999) (citing *Davis*, 526 U.S. at 648).

As alleged in the Complaint, Defendants' actions cannot be construed as deliberately indifferent to the alleged incidents regarding S.J.W., and certainly not to the degree that this Court could reasonably infer that Defendants "intended for the harassment to occur." *DiStiso*, 691 F.3d at 241; *see also Davis*, 526 U.S. at 649 (quotation omitted) (in these cases, "there is no reason why

courts, on a motion to dismiss . . . could not identify a response as not clearly unreasonable as a matter of law"); *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 194 (D. Conn. 2016) (plaintiff failed to state an equal protection claim for deliberate indifference where school officials generally addressed plaintiff's complaints by providing support for plaintiff or disciplining the offending students); *D.T. v. Somers Cent. Sch. Dist.*, 588 F. Supp. 485, 497 (S.D.N.Y. 2008) (defendants' response was not so deliberately indifferent as to be clearly unreasonable where defendants "engaged in some forms of investigation" into the alleged incident).

Because Plaintiffs have not alleged that S.J.W. faced any race-based harassment, and have not pleaded facts that support an inference of deliberate indifference by Defendants, Plaintiff's claim of racial discrimination against S.J.W. under Title VI or the Equal Protection Clause must be dismissed.

<div align="center">

**POINT II**
**PLAINTIFFS' CLAIMS REGARDING K.W. PRIOR TO**
**THE 2019-20 SCHOOL YEAR ARE TIME-BARRED**

</div>

***Second***, Plaintiffs' claims regarding K.W. prior to the 2019-20 school year are time-barred because Plaintiffs did not file this action before the statute of limitations expired.  Plaintiffs filed the Complaint on February 16, 2023.  *See* Compl. (ECF No. 1).  Claims brought under § 1983 in New York are "subject to a three-year statute of limitations running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal citation and quotation omitted); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (citation omitted) ("While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues.").  For claims of racial discrimination, the continuing violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations."  *Quinn v. Green Tree Credit*

<div align="center">

10

</div>

*Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (emphasis removed) (quotation omitted).  This exception, however, is "heavily disfavored" in the Second Circuit, and courts are "loath" to apply it—they will do so only in "compelling circumstances."  *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

To assert a continuing violation in order to save their claims prior to the 2019-20 school year, Plaintiffs must establish "proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Quinn*, 159 F.3d at 766 (quotation omitted).  The converse is also true—"multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.* at 765 (quotation omitted).  Additionally, discontinuity between alleged events is "fatal" to a continuing violation argument.  *See id.* at 766 (citation omitted).  "A conclusory allegation of a continuing violation is insufficient to withstand a motion to dismiss."  *Goodman v. N.Y.C. Off-Track Betting Corp.*, 1999 U.S. Dist. LEXIS 6291, at *16 (S.D.N.Y. Apr. 30, 1999) (quotation omitted), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

Plaintiffs' claims as alleged prior to the 2019-20 school year are barred by the statute of limitations.[5]  Plaintiffs fail to establish a continuing violation because their allegations, as pleaded,

---

[5]   On March 20, 2020, the Governor of New York issued Executive Order 202.8, which tolled "any specific time limit for the commencement, filing, or service of any legal action."  N.Y. Exec. Order 202.8 (Mar. 20, 2020).  The tolling period was later extended to November 3, 2020.  *See* N.Y. Exec. Order 202.67 (Oct. 4, 2020).  Courts in this District have concluded that these executive orders apply to federal cases applying New York's statute of limitations for § 1983 claims.  *See, e.g.*, *Rivera v. City of N.Y.*, 2022 U.S. Dist. LEXIS 87083, at *11 (S.D.N.Y. May 13, 2022); *Rich v. N.Y.*, 2022 U.S. Dist. LEXIS 60779, at *20–21 (S.D.N.Y. Apr. 29, 2022).

Plaintiffs filed the Complaint on February 16, 2023.  *See* Compl. (ECF No. 1).  Three years prior to that date—including the tolling period due to the executive orders—was July 2, 2019, which falls in the summer between the 2018-19 and 2019-20 school years.

contain a significant discontinuity: the 2020-21 and 2021-22 school years. *See Weeks v. N.Y. State*, 273 F.3d 76, 84 (2d Cir. 2001) (citing *Quinn*, 159 F.3d at 766) ("Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception."). For K.W., Plaintiffs plead these two school years in a section together that comprises all of ***four total*** paragraphs with ***minimal*** allegations, none of which are related to race, when each of K.W.'s other school years at Peck Slip receive lengthy sections (averaging 15 paragraphs per year) detailing the many incidents that supposedly occurred to her in those years. *See* Compl. (ECF No. 1) ¶¶ 115–18. Plaintiffs allege that during K.W.'s third grade year (2020-21), which she attended remotely, she was apparently told that she could not join a Zoom breakout room by other students; they do not allege that the students mentioned or in any way alluded to K.W.'s race during this interaction. *Id.* ¶ 116. This minimal, conclusory allegation cannot carry a continuing violation claim. *See, e.g.*, *Doe v. Anonymous Inc.*, 2019 U.S. Dist. LEXIS 107886, at *10 (S.D.N.Y. June 25, 2019) (rejecting continuing violation claim where plaintiff stopped working in November 2014 yet stated in a conclusory fashion that the alleged violations continued through October 2015); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006) (rejecting continuing violation claim where plaintiff alleged a scant three isolated sentences in his lengthy 22-page complaint).

Further, Plaintiffs did not allege any instances of bullying or harassment directed at K.W. during the 2021-2022 school year, nor do they allege any instances related to the alleged culture of racism and bullying at Peck Slip. Plaintiffs' only allegation during the 2021-2022 school year is that that K.W. felt isolated by classmates and was sad—without any description of what caused K.W. to feel this way, much less an allegation that she was experiencing discrimination. Compl. (ECF No. 1) at ¶ 118; *see, e.g.*, *Doe*, 2019 U.S. Dist. LEXIS 107886, at *10; *Sundaram*, 424 F. Supp. 2d at 561.

It is abundantly clear from the above that Plaintiffs have failed to allege that K.W. faced discrimination during these school years, and thus they fail to establish a continuing violation. Accordingly, Plaintiffs have pleaded their racial discrimination claims for K.W. **at most** for the school years 2019-20 and 2022-23, and all allegations regarding K.W. prior to the beginning of the 2019-20 school year should properly be discarded as outside of the statute of limitations.

### POINT III
### PLAINTIFFS HAVE NOT SUFFICIENTLY
### ALLEGED *MONELL* CLAIMS

*Third*, Plaintiffs' claims fail against the Municipal Defendants because Plaintiffs do not sufficiently allege the existence of an unconstitutional municipal policy or custom, much less that any municipal policy or custom directly caused their alleged injuries.

A municipal entity such as the DOE "may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "[U]nder § 1983, local governments are responsible only for their **own** illegal acts . . . They are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal quotation and citations omitted) (emphasis in original). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691).

Plaintiffs can show a municipal policy in four ways: "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589–90 (2d Cir. 2019) (internal quotations and citations omitted). "Once a plaintiff has

13

demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Id.* at 590 (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

Further, it is well-established that "[c]onclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation." *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705–06 (S.D.N.Y. 1999) (collecting cases); *see also Montero v. City of Yonkers*, 890 F.3d 386, 403–04 (2d Cir. 2018) (quotation omitted) ("the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

## A.   Plaintiffs Have Failed to State a *Monell* Claim Against the Municipal Defendants

Plaintiffs attempt to assert a claim that the DOE has "chosen to maintain a segregated school system and allow toxic racism to permeate New York City's schools." Compl. (ECF No. 1) at p. 34.[6]  They explain in general terms that segregation harms students, as if stating these platitudes automatically imposes liability upon the DOE.  *See id.* ¶¶ 217–229.  Plaintiffs then state that New York City and the DOE have "repeatedly chosen to halt efforts to integrate the City's public schools," and they then tell an exhaustive story about these supposed failures.  *Id.* ¶¶ 244–

---

[6]   Plaintiffs additionally allege that the Municipal Defendants "have failed to implement and follow state laws and the Chancellor's regulations aimed at curbing racial discrimination." Compl. (ECF No. 1) ¶¶ 204–16.  They allege that this supposed failure to comply with these laws and regulations is evidenced by the fact that the Peck Slip website lacks certain terms, links to DOE policies, or complaint mechanisms.  *Id.* ¶¶ 215–16.  If these claims are meant to serve as an additional basis for *Monell* liability, these fail because these allegations are "the antithesis of a *Monell* claim," as "any violation of Plaintiff[s'] constitutional rights was caused by the *failure* to follow a policy, not the policy itself."  *Berkley v. City of New Rochelle*, 2022 U.S. Dist. LEXIS 46069, at *25–26 (S.D.N.Y. Mar. 15, 2022) (quotations omitted) (emphasis retained) (collecting cases).

263.  But in laying out this history, review of various lawsuits, and social science research, Plaintiffs utterly fail to make a ***single*** causal connection between some municipal policy or custom and their constitutional claims, as is required to state a *Monell* claim.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quotation omitted) (a causation allegation requires a showing that the municipality was the "moving force" behind the alleged injury); *see also, e.g.*, *Delaney v. City of Albany*, 2019 U.S. Dist. LEXIS 58151, at *18 (N.D.N.Y. Apr. 4, 2019) (dismissing plaintiff's *Monell* claim because he failed to allege an affirmative link between any custom or policy and the alleged constitutional violations); *Franzese v. City of N.Y.*, 2018 U.S. Dist. LEXIS 193607, at *11 (S.D.N.Y. Nov. 13, 2018) (dismissing plaintiff's *Monell* claim because of a lack of a causal connection where plaintiff did not plead that his assailant was able to enter his cell because of the lockout policy he alleged).

Further, these statements of the supposed municipal "policy" are mere conclusory allegations, without the specific facts tending to support an inference that New York City actually has an official ***policy*** of refusing to desegregate its schools.  "'[P]olicy' is not a magic word"; "[s]imply saying it does not make it so."  *Zherka v. City of N.Y.*, 2010 U.S. Dist. LEXIS 119699, at *8 (S.D.N.Y. Nov. 9, 2010) (plaintiff failed to plead non-conclusory facts showing that "any official's actions represent official policy," instead of some vague allegation that agencies and officials were working together for a certain end); *see also, e.g.*, *Lara-Grimaldi v. Cnty. of Putnam*, 2018 U.S. Dist. LEXIS 54686, at *56 (S.D.N.Y. Mar. 29, 2018) (dismissing a *Monell* claim where plaintiff failed "to cite or describe a policy officially promulgated by [the county] or a specific act taken by a final policymaker of [the county]"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (dismissing *Monell* claim where plaintiff failed to allege facts to support an inference that defendant had a custom or practice of tolerating police abuse); *Simms v. City of N.Y.*,

2011 U.S. Dist. LEXIS 115949, at *9–10 (E.D.N.Y. Sept. 27, 2011), *aff'd*, 480 Fed. App'x 627 (2d Cir. 2012) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what municipal policies or practices led to the alleged deficiency).

### B.   Plaintiffs Also Fail to State a *Monell* Claim Against the Individual Defendants

Further, allegations against the Individual Defendants cannot sustain a *Monell* claim.  *See, e.g.*, *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Monell*, 436 U.S. at 694) ("a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality").  In order to sustain such a claim, the official or officials in question "must have been sufficiently high up in the municipal hierarchy that [s]he was responsible under state law for making policy in that area of the municipality's business."  *Id.* (internal quotations omitted). "Policy" means possessing "authority to adopt rules for the conduct of the municipal government." *Id.* (quotation omitted).  Here, it is clear that Ms. Siena, as Principal of a single elementary school out of the approximately 700 schools in New York City, and Ms. Corey, as the Assistant Principal, do not possess this authority.  *See id.* at 98–99 (holding that the actions of New York City school principals cannot sustain a *Monell* claim).

Similarly, Plaintiffs' allegations against District 2 cannot sustain a *Monell* claim.  New York law provides that the BOE is the final policymaking body for New York City schools, and the decisions of all officials under that level—even the Superintendent of a school district— "constitute mere recommendations that must ultimately be adopted by the final policymaking body" (*i.e.*, the BOE).  *Boncoeur v. Harverstraw-Stony Point Cent. Sch. Dist.*, 2022 U.S. Dist. LEXIS 51428, at *46 (S.D.N.Y. Mar. 22, 2022) (citing N.Y. Educ. Law § 1709, additional quotation omitted).

Accordingly, Plaintiffs have failed to state any *Monell* claims, and all *Monell* claims should be dismissed.

      **C.**      **In the Alternative, Defendants Request a Stay of Discovery on Plaintiffs' *Monell* Claims Until the Completion of Discovery**

Additionally, should the Court not dismiss Plaintiffs' *Monell* claims, it should nevertheless stay discovery on the *Monell* claims until the completion of discovery on Plaintiffs' claims against Ms. Siena and Ms. Corey.   "Upon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Fed. R. Civ. P. 26(c), "particularly where resolution of a preliminary matter may decide the entire case."   *Oliver v. City of N.Y.*, 540 F. Supp. 3d 434, 435 (S.D.N.Y. 2021) (quotations and citations omitted).

"Courts in this Circuit favor bifurcating *Monell* claims."   *Minea v. City of N.Y.*, 2013 U.S. Dist. LEXIS 46953, at *4 (E.D.N.Y. Mar. 29, 2013) (collecting cases).  This is because "discovery on a plaintiff's *Monell* claim could prove entirely irrelevant to a section 1983 case and cause unnecessary burden."   *Oliver*, 540 F. Supp. 3d at 436 (quotation omitted).  The "overwhelming weight of authority in this Circuit . . . holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established."   *Rodriguez v. City of N.Y.*, 2022 U.S. Dist. LEXIS 195034, at *3 (E.D.N.Y. Oct. 20, 2022) (quotation omitted); *see also Oliver*, 540 F. Supp. 3d at 436 (quotation omitted) ("courts often stay discovery on *Monell* claims until enough information is available on the individual claims—either at the close of discovery or following summary judgment—to assess the strength of a claim that a constitutional violation actually took place").

Indeed, staying discovery on *Monell* claims is economical for the Court by "preventing a prolonged examination of government policy and custom before trial," which, based on the Complaint here "could be a time-consuming and elaborate affair. . . ." *Ricciuti v. N.Y.C. Transit Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992); *see also Thrower v. Pozzi*, 2002 U.S. Dist. LEXIS 1035, at *22 (S.D.N.Y. Jan. 23, 2002) ("Given that discovery on the claims against the individual defendants is much more limited, efficiency will best be served if the discovery on the claims against the supervisory defendants is stayed pending completion of discovery on the claims against the individuals."). This is especially true here—discovery in this case will be extensive even as to the Individual Defendants alone, even without delving into decades of desegregation efforts in New York City and the current status of racial integration of its schools.

<u>**POINT IV**</u>
**PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND**
<u>**DECLARATORY RELIEF ARE MOOT**</u>

***Fourth***, Plaintiffs' claims for injunctive and declaratory relief will become moot as of June 27, 2023, and accordingly, the Court should dismiss these claims as of that date for lack of subject matter jurisdiction. A claim "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)) (internal quotation marks omitted).

The court may dismiss injunctive claims as moot where the "injunction no longer affects the rights or future conduct of the parties." *Dodge St. L.L.C. v. C.R.L. Mgmt., Inc.*, 2000 U.S. App. LEXIS 5766, at *2 (2d Cir. Mar. 29, 2000) (citation omitted). Similarly, for a claim for a declaratory judgment, the court must consider if there remains "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant to issuance of a declaratory judgment." *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods.*, 2021

18

U.S. Dist. LEXIS 152026, at *10 (S.D.N.Y. Aug. 12, 2021) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).   Therefore, a finding that plaintiff's request for injunctive or declaratory relief is moot means "federal courts lack subject matter jurisdiction over the action" and dismissal under Rule 12(b)(1) is proper.  *Doyle v. Midland Credit Mgmt.*, 722 F.3d 78, 80 (2d Cir. 2013) (quotation omitted); *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 123 (S.D.N.Y. 2019) ("when an actual controversy ceases to exist, there can be no claim under the Declaratory Judgment Act, and the court loses subject matter jurisdiction").

Plaintiffs' claims for injunctive and declaratory relief will become moot as of the end of the 2022-23 school year, since when the school year concludes, K.W. will graduate fifth grade and will no longer be enrolled at Peck Slip, and the Winbushes withdrew S.J.W. from the school in March 2023 (and he has not returned).  Because Plaintiffs will then have no children attending Peck Slip, their claims for injunctive and declaratory relief are moot and must be dismissed pursuant to Rule 12(b)(1).  *See Dodge St. L.L.C.*, 2000 U.S. App. LEXIS 5766, at *2–3 (affirming dismissal as moot where appellant was evicted from its office space and no longer sought to be put back into possession); *Lifeguard Licensing Corp.*, 371 F. Supp. 3d at 128–29 (dismissing defendants' counterclaims for declaratory judgments as moot).

## POINT V
## PLAINTIFFS CANNOT RECEIVE EMOTIONAL DISTRESS DAMAGES UNDER TITLE VI

*Fifth*, to the extent Plaintiffs plead that their damages for their Title VI claims are compensatory damages for emotional distress, these are not recoverable under Title VI.  *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022), *reh'g denied*, 142 S. Ct. 2853 (2022).  Defendants do not move to dismiss Plaintiffs' Title VI claims for K.W., but instead move to bar Plaintiffs from asserting compensatory damages for emotional distress for their Title VI claims regarding both children to the extent that these claims survive this motion.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that this Court dismiss or limit Plaintiffs' claims and recovery as detailed in this Motion, and award Defendants such other and further relief as the Court deems just and proper.


Dated:        May 9, 2023
              New York, New York

<div style="margin-left:auto">

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
   City of New York
*Attorney for Defendants*


By:     /s/ *John Treat*
        JOHN TREAT
        Special Assistant Corporation Counsel
        100 Church Street
        New York, NY 10007
        t: (212) 356-2461
        e: jtreat@law.nyc.gov

        KENDRA ELISE RIDDLEBERGER
        Assistant Corporation Counsel
        100 Church Street
        New York, NY 10007
        t: (212) 356-4377
        e: kriddleb@law.nyc.gov

</div>